IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
IN OPEN COURT

JUN 2 5 2010

CLERK U.S. DISTRICT COURT
ALEXANDRIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:10cr202 |
| | ) | |
| AFGHAN INTERNATIONAL TRUCKING, | ) | |
| Defendant. | ) | |

### STATEMENT OF FACTS

The United States and the Defendant, Afghan International Trucking ("AIT"), agree that had this matter proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt:

### BACKGROUND

1. The United States maintained and operated a base, known as Bagram Airfield ("Airfield"), in support of military operations Afghanistan. The United States Air Force and the United States Army were responsible for different aspects of the base operations. The United States awarded trucking contracts to Afghani trucking companies to operate within the base, bringing deliveries to and from the Airfield.

2. The United States Army supervised all Host Nation Trucking through the Transportation Operations Support Office ("TOSO") at the Bagram Airfield. The Army assigned both military officers and contract employees to the TOSO. These individuals were charged with reviewing all transportation requests and transportation providers. There were nine Afghani trucking companies working on the Airfield and officials in the TOSO were in charge of assigning days of trucking services to the companies based on their performance records. TOSO officials were supposed to objectively determine

1

whether the companies provided adequate service, which included, but was not limited to, timely delivery and protecting the deliveries from pilfering. If a company failed to provide adequate service, the TOSO could penalize the company by removing it from the trucking schedule and awarding its work days to other companies. While the U.S. government paid each company the same rate for its work, the rates paid varied according to each mission and were based on the type of truck needed, the type of cargo transported, and the distance traveled on each mission.

3. Among the companies providing trucking services for the Airfield was the defendant, AIT. AIT is a corporation registered in Afghanistan.

## CRIMINAL CONDUCT

4. Person A, a Sergeant with the United States Army, was deployed to the Airfield from in or about January 2004 until on or about January 21, 2005. Person A served at the TOSO as the Noncommissioned Officer in Charge ("NCOIC") of Operations Support, a position he held until in or about January 2005. As a member of the United States Army, Person A was a public official within the meaning of 18 U.S.C. § 201(a)(1). As NCOIC, Person A had responsibility for trucking and transportation services at the Airfield. On a near-daily basis, Person A coordinated line haul services into and out of the Airfield, which required gathering requests for the transportation of supplies and other provisions from in and around the Airfield to various forward-operating bases in Afghanistan and assigning those requests to various private contracting firms. As NCOIC, Person A also participated in evaluating, recommending, and facilitating the award of line haul contracts at the Airfield.

5. In or about October 2004, an agent for AIT, acting for and on behalf of AIT, entered into an illegal agreement with Person A. As part of their agreement, AIT offered and agreed to make payments to Person A, directly and through his family members, in order to influence Person A to commit fraud against the United States and to induce Person A to make payments to AIT in violation of Person A's lawful duties as a public official. In exchange for the payments, Person A authorized payments to AIT in excess of the amount that AIT was rightfully due.

6. As part of the agreement, AIT wired $10,000 to Person A's father and $5,000 to Person A's sister on or about October 5, 2004. On or about October 21, 2004, AIT wired an additional $10,000 to Person A's sister. On or about November 8, 2004, AIT wired an additional $10,000 to Person A's father. On January 25, 2005, AIT wired $4,975.00 to Person A directly.

7. From in or about 2004 until in or about April 2005, Ana Chavez ("Chavez") was a Sergeant in the U.S. Army stationed at the Airfield. During that time, as a member of the military, Chavez was a public official as defined by 18 U.S.C. § 201(a)(1).

8. As part of her deployment to the Airfield, Chavez was assigned to the TOSO. Chavez was responsible for administering transportation services provided by Airfield contractors, including line haul trucks used to transport goods from the Airfield to destinations throughout Afghanistan. Chavez could issue work orders for line haul services and could, through her recommendation, influence which contractor received line haul services contracts.

9. During her deployment to the Airfield, AIT corruptly gave, offered and promised $90,000 in cash and wire transfers to Chavez, directly and through her family members,

in return for exercising her influence at the TOSO in the award of contracts and work orders to AIT.

10. In or about March 2005, an agent for AIT, acting for and on behalf of AIT, gave Chavez approximately $70,000 in cash hidden in a candy box.

11. AIT then transferred approximately $20,000 in additional funds from Afghanistan to Chavez's relatives in El Salvador through international wires.

12. James Paul Clifton ("Clifton") was a staff sergeant in the United States Army. On or about February 10, 2008, the Army assigned Clifton to be the Contracting Officer Representative ("COR") at the TOSO in the Airfield. As the COR, Clifton had the power to create the trucking schedule used by the TOSO to assign work to the Afghan trucking companies servicing the Airfield. As a member of the military, Clifton was a public official as defined by 18 U.S.C. § 201(a)(1).

13. In or about May 2008, an agent for AIT, acting for and on behalf of the company, offered Clifton $20,000 a month if he would assign AIT an additional day of trucking services a month. Clifton agreed to assign an additional day of trucking business to AIT each month.

14. From May 2008 to July 2008, Clifton assigned an additional day of trucking services to AIT each month in exchange for bribe payments. Between May 10, 2008 and October 18, 2008, AIT wired bribe payments of $60,000 to Clifton's then-girlfriend, Person B. AIT sent the payments from Dubai, United Arab Emirates using Western Union wire transfer services. Person B received the payments in Newport News, Virginia.

15. In total, AIT made more than $120,000 but less than $200,000 in bribe payments to U.S. public officials.

16. AIT engaged in the conduct described above knowingly and willfully and not because of accident, mistake, or other innocent reason.

NEIL H. MACBRIDE
United States Attorney

By: _____
Steve Linick
Special Assistant United States Attorney
VA Bar No. 66136
Counsel for the United States
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 202-353-1630
Fax: 202-514-7021
Email: steve.linick@usdoj.gov

By: _____
Liam Brennan
Trial Attorney
United States Department of Justice
Criminal Division – Fraud Section
CT Juris No. 429013; Federal Bar No. CT27924
1400 New York Ave., NW
Washington, D.C. 20530
Phone: 202-353-7692
Fax: (202) 514-0152
Email: Liam.Brennan@usdoj.gov

Defendant's Signature: After consulting with the attorney for the corporation and pursuant to the plea agreement entered into this day between the defendant, Afghan International Trucking, and the United States, as the corporate representative, I hereby stipulate that the description of Afghan International Trucking's actions in the above Statement of Facts is true and accurate. I further acknowledge that had the matter proceeded to trial, the United States would have proven the above Statement of Facts beyond a reasonable doubt.

Date: 6/7/2010

Javid Gul Asghar
Corporate Representative for the Defendant

Defense Counsel Signature: I am Afghan International Trucking's attorney. I have carefully reviewed the above Statement of Facts with company executives. To my knowledge, the company's decision to stipulate to these facts is an informed and voluntary one.

Date: 6-2-2010

John Brownlee
Counsel for the Defendant

6